UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES D. WILKS,

    Plaintiff,

    v.

KING COUNTY, *et al.*,

    Defendants.

CASE NO. C07-1504-MJP-JPD

REPORT AND RECOMMENDATION

Plaintiff James Wilks is a county prisoner who is incarcerated at the King County Correctional Facility ("KCCF") in Seattle, Washington. He brings this civil rights action under 42 U.S.C. § 1983 to allege violations of his constitutional rights by three members of the Seattle Police Department, Officers Merry O'Cleary, Chriseley Lang and P.J. Fox ("the City defendants"), and one employee of the KCCF, Sergeant Rachel Wilks.[1] Plaintiff seeks damages in the amount of $5 million for his pain and suffering and for the violation of his civil rights.

The City Defendants have filed a motion seeking dismissal of this action or, in the alternative, summary judgment. Defendant Wilks has filed a motion for summary judgment and dismissal.

---

[1] Plaintiff Wilks and Sergeant Wilks are not related.

REPORT AND RECOMMENDATION
PAGE - 1

1    Plaintiff has not filed a response to either motion.[2]  Following a careful review of defendants'

2    motions, and the balance of the record, this Court concludes that the City defendants' motion to

3    dismiss should be denied, the City defendants' motion for summary judgment should be granted[3], and

4    defendant Wilks' motion to dismiss should be granted.

## DISCUSSION

Plaintiff alleges in his complaint that Officers O'Cleary and Lang violated his rights when, on August 26, 2007, they entered his tent and dismantled it, when they placed him under arrest, and when Officer Lang used excessive force in effectuating his arrest. Plaintiff also alleges that Officer Fox violated his rights when, on August 24, 2007, he threatened to arrest plaintiff if plaintiff did not turn over property in his possession to another individual and when Officer Fox told plaintiff that he could not go to Occidental Park as he had intended to do, and ordered plaintiff instead to take his belongings and go under the viaduct. Plaintiff maintains that the camp he set up under the viaduct, in accordance with Officer Fox's directive, was the camp later destroyed by Officers O'Cleary and Lang. As to Sergeant Wilks, plaintiff alleges that this defendant violated his rights when, on August 26, 2007, she ordered that plaintiff be "dressed-out" in a white ultra-security uniform upon being booked into the KCCF. Plaintiff further alleges that defendant Wilks improperly removed items from his cell during a cell search, and that she caused him to be subjected to various unconstitutional conditions of confinement.

The City defendants move for dismissal of the complaint under Rule 41(b) of the Federal Rules of Civil Procedure based upon plaintiff's failure to prosecute this action. The City defendants

---

[2] Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (*See* Dkt. No. 22 at 2.)

[3] The City defendants' motion for summary judgment is, in effect, a motion for partial summary judgment because it does not address all claims alleged against them in plaintiff's complaint.

move, in the alternative, for summary judgment on plaintiff's claim that defendants O'Cleary and Lang violated his Fourth Amendment rights by handcuffing and detaining him on August 26, 2007, and on plaintiff's claims against defendant Fox. Defendant Wilks moves for dismissal of plaintiff's claims based upon plaintiff's failure to exhaust his administrative remedies. She moves, in the alternative, for dismissal of plaintiff's claims based upon plaintiff's failure to state a claim upon which relief may be granted.

## Failure to Prosecute

The City defendants first argue that they are entitled to dismissal of plaintiff's complaint, with prejudice, because plaintiff has failed to prosecute this action. Defendants assert that such a disposition is appropriate because plaintiff was aware that he had an obligation to move this action toward trial, plaintiff has taken no action in this matter since filing his complaint in September 2007, and plaintiff has not prevailed on any of the cases he has previously filed against King County or the City of Seattle.

The Ninth Circuit has made clear that "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). A district court must consider five factors in evaluating a motion to dismiss for failure to prosecute: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Henderson*, 779 F.3d at 1423. This Court, having considered the five *Henderson* factors, concludes that this case does not present exceptional circumstances of unreasonable delay which warrant dismissal based upon plaintiff's failure to prosecute.

REPORT AND RECOMMENDATION
PAGE - 3

1 | Plaintiff submitted his complaint to this Court for filing in September 2007. Because of a deficiency in plaintiff's application to proceed *in forma pauperis* ("IFP"), the complaint was not filed immediately. Plaintiff corrected the IFP deficiency in October 2007, and plaintiff's IFP application was granted and his complaint was filed on November 14, 2007. (*See* Dkt. Nos. 5, 6 and 7.) The Court ordered plaintiff's complaint served on defendants on the same date. (Dkt. No. 8.) Sergeant Wilks and the City defendants filed their answers to the complaint on January 11, 2008, and January 22, 2008, respectively. On February 11, 2008, this Court issued an Order Regarding Pretrial Preparations in which it established a discovery deadline of May 12, 2008, and a dispositive motion filing deadline of June 12, 2008. (Dkt. No. 22.)

On May 9, 2008, defendant Wilks filed a motion seeking to stay these proceedings based on plaintiff's incompetency.[4] On June 12, 2008, the parties filed the currently pending dispositive motions and, on June 19, 2008, this Court issued an Order granting defendant Wilks' motion to stay these proceedings. The stay was lifted on September 16, 2008, and the pending dispositve motions were re-noted on the Court's calendar for consideration.

At the time the City defendants filed their motion to dismiss, plaintiff had not missed any Court deadlines nor had he taken any actions to impeded the litigation. Plaintiff did not conduct any discovery, but he was under no obligation to do so. Defendants maintain that plaintiff was aware that he had an obligation to move his case toward trial because a motion to dismiss for failure to prosecute had been filed in another of plaintiff's lawsuits, C07-777-RSM. However, a review of the Court's records does not reveal that any such motion was ever filed in C07-777-RSM. The document which defendants appear to rely on to support their argument is, in fact, a motion for summary judgment and dismissal which was filed by the King County Prosecuting Attorney's Office in cause

---

[4] Defendant Wilks' motion papers revealed that on April 25, 2008, the King County Superior Court issued an Order finding plaintiff incompetent to stand trial in that court and committing plaintiff to Western State Hospital for further evaluation and treatment. (*See* Dkt. No. 16, Ex. C.)

REPORT AND RECOMMENDATION
PAGE - 4

number C07-777-RSM in January 2008. (*See* Dkt. No. 27, Ex. I.) This Court was unable to identify in the referenced document any argument that defendants were entitled to dismissal based upon plaintiff's failure to prosecute. Finally, the fact that plaintiff has not prevailed on any of his previously filed actions does not, in this Court's view, weigh in favor of imposing the ultimate sanction of dismissal in this one.

The City defendants have not established that they are entitled to dismissal of this action, with prejudice, based upon plaintiff's failure to prosecute. Accordingly, the City defendants' motion to dismiss should be denied. The Court will now turn to consideration of the City defendants' motion for summary judgment.

## Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e).

### *1.     Officers O'Cleary and Lang*

Plaintiff's claims against defendants O'Cleary and Lang arise out of an incident which occurred on August 26, 2007. Plaintiff states that on that date, defendants O'Cleary and Lang came to his "tent-camp" located at South Main Street and Alaskan Way South in Seattle. Plaintiff asserts

REPORT AND RECOMMENDATION
PAGE - 5

that when defendants arrived at his camp, they kicked his girlfriend out of the tent, they then entered the tent and "did an illegal search and seizure," they removed his personal belongings from the tent, and they tore the tent down.[5] Plaintiff asserts that after his tent was dismantled, defendant O'Cleary advised him that he was under arrest for criminal trespassing. According to plaintiff, he was standing with his hands on the hood of defendant O'Cleary's patrol car when defendant Lang proceeded to handcuff him. Plaintiff contends that as defendant Lang put the handcuffs on his right wrist, she dug the cuff into an open wound causing him extreme pain and suffering. Plaintiff asserts that the actions of defendants O'Cleary and Lang violated his rights under the Fourth and Eighth Amendments to the United States Constitution, as well as his rights under the Washington State Constitution.

Defendants O'Cleary and Lang argue that they are entitled to summary judgment because they met Fourth Amendment requirements in conducting their investigative stop of plaintiff on the date in question. The Fourth Amendment guarantees that individuals will not be subjected to unreasonable searches and seizures. The Supreme Court has held that a police officer may, consistent with Fourth Amendment principles, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that a person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In *Terry*, the Supreme Court established a framework for evaluating the reasonableness of an investigatory stop. The Supreme Court identifies the relevant inquiry as "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*, at 20. In *Florida v. Royer*, 460 U.S. 491

---

[5] In his complaint, plaintiff offers two slightly different descriptions of what happened to his property. In the statement of his claim against defendant O'Cleary, plaintiff asserts that his personal belongings were thrown onto the sidewalk next to the dismantled tent. (*See* Dkt. No. 7 at 7.) In the statement of his claim against defendant Lang, plaintiff asserts that his belongings were thrown over a fence and into an adjacent parking lot, and that he was advised by defendant O'Cleary that he would have to call the Harbor Patrol in order to get his belongings back. (*See id.* at 9-10.)

REPORT AND RECOMMENDATION
PAGE - 6

1  (1983), the Supreme Court, relying on the framework established in *Terry*, explained that the scope

2  of an investigative detention "must be carefully tailored to its underlying justification . . ., and [may]

3  last no longer than is necessary to effectuate the purpose of the stop." *Id*., at 500.

4　　　　The City defendants offer in support of their motion for summary judgment the declarations

5  of defendants O'Cleary and Lang. Defendants state that at around 12:04 p.m. on August 26, 2007,

6  they responded to South Main Street and Alaskan Way South on a citizen report that a male who was

7  camped out at that location was defecating in public.[6] (*See* Dkt. No. 29 at 1 and Dkt. No. 30 at 1.)

8  According to defendant O'Cleary, when she received that call, she was aware that the description of

9  the suspect matched that of an individual who had previously camped out at the same location and

10 who had previously been warned by defendant O'Cleary that he would have to move from that

11 location because he was trespassing. (Dkt. No. 30 at 1-2.) That individual was plaintiff. (*Id*.)

12　　　　Defendant O'Cleary states that when she arrived at the camp, she observed plaintiff standing

13 on the sidewalk next to his tent. (*Id*. at 2.) She asked plaintiff if he remembered her previous

14 warning to move from the location and he indicated that he did and that he would pile his belongings

15 into his cart – a Safeway shopping cart – and go. (*Id*.) Defendant O'Cleary states that because

16 plaintiff had previously threatened to kill police officers as well as citizens, she felt that safety

17 concerns warranted securing plaintiff in handcuffs in the back of her squad car until a sergeant could

18 arrive to screen the incident. (*Id*.) After securing plaintiff, she advised him that he was being

19 arrested for trespassing and for possession of stolen property. (*Id*.) Defendant O'Cleary states that

20 plaintiff was interviewed and released after the sergeant arrived at the scene. (*Id*.)

---

[6] This was the second of three contacts police had with plaintiff on August 26, 2007. The third contact, which occurred at approximately 2:00 p.m. that afternoon, resulted in plaintiff being booked into the KCCF for investigation of harassment. (*See* Dkt. No. 27, Ex. E.)

REPORT AND RECOMMENDATION
PAGE - 7

1         Defendant Lang, in her declaration, essentially reiterates that defendant O'Cleary recognized plaintiff from a prior contact, that they handcuffed plaintiff because they feared he could become violent given his prior threats against police officers and citizens, and that he was interviewed and released after the sergeant arrived to screen the incident. (*See* Dkt. No. 29.)

        Defendants argue that because of plaintiff's continued presence at a camp he was previously directed to vacate, as well as the conduct described in the citizen report, they had sufficient grounds to briefly detain plaintiff and investigate. Defendants further argue that they had the right to secure plaintiff during the course of the brief detention because defendant O'Cleary recalled plaintiff threatening to kill officers and other citizens in her previous contacts with him. The evidence provided by defendants supports their assertion that they were justified in detaining plaintiff and in securing him for their own safety. Plaintiff provides no evidence to refute that presented by defendants. Accordingly, defendants O'Cleary and Lang are entitled to summary judgment with respect to plaintiff's claim that these defendants violated his Fourth Amendment rights when they detained him on August 26, 2007.

        Plaintiff's claim that defendants O'Cleary and Lang violated his Fourth Amendment rights when they conducted an illegal search and seizure of his tent, and plaintiff's claim that defendant Lang used excessive force when handcuffing him, remain in this action as defendants presented no argument directed to these claim in their summary judgment motion.

### 2. *Officer Fox*

        Plaintiff's claims against defendant Fox arise out of an incident which occurred on August 24, 2007. Plaintiff alleges that on that date, defendant Fox threatened to arrest him if he did not turn over a guitar case that was in his possession to another individual who claimed that plaintiff had stolen the guitar case from him. Plaintiff further alleges that defendant Fox violated his rights when defendant Fox told him he could not go to Occidental Park as he had intended to do, and ordered plaintiff

instead to take his belongings and go under the viaduct.  Plaintiff maintains that the camp he set up under the viaduct, in accordance with defendant Fox's directive, was the camp later destroyed by defendants O'Cleary and Lang.

Defendant Fox argues that he is entitled to summary judgment because plaintiff has not alleged a viable cause of action against him under § 1983.  In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Defendant Fox acknowledges that he made contact with plaintiff on August 24, 2007, but he does not describe that nature of that contact.  Defendant Fox does, however, state in his declaration offered in support of the City defendants' summary judgment motion that he did not instruct plaintiff to set up camp underneath the viaduct on August 24, 2007.  Plaintiff offers no evidence to the contrary.  Accordingly, defendant Fox is entitled to summary judgment with respect to that claim.

Defendant Fox does not address plaintiff's claim that he threatened to arrest plaintiff if plaintiff did not give another man his guitar case.  This assertion, at most, amounts to a claim that defendant Fox unlawfully deprived plaintiff of his personal property.  The Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  However, where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the state provides an adequate post-deprivation remedy.  *Hudson v.*

REPORT AND RECOMMENDATION
PAGE - 9

*Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Washington State provides a post-deprivation remedy for the alleged tortious conduct of city and county employees' under RCW 4.96. Plaintiff does not allege any due process inadequacy in the tort remedy provided under RCW 4.96. Thus, plaintiff has not alleged a viable claim for relief with respect to the loss of his personal property. Plaintiff's complaint should therefore be dismissed with respect to his claim concerning the guitar case.

<u>Exhaustion of Administrative Remedies</u>

Plaintiff alleges that Sergeant Wilks violated his rights under the federal constitution when, on August 26, 2007, she ordered that plaintiff be "dressed-out" in a white ultra-security uniform upon being booked into the KCCF. Plaintiff further asserts that during the course of his incarceration at KCCF, he was denied clothes, bedding, personal hygiene items, hot meals and fresh drinking water as a direct result of Sergeant Wilks' actions, and that Sergeant Wilks "raided" and improperly removed items from his cell while he was at an attorney visit. Sergeant Wilks argues that plaintiff's claims against her should be dismissed because plaintiff failed to exhaust his administrative remedies.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires *complete* exhaustion through any available process. *See Porter v. Nussle* 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted."); *Booth v. Churner*, 532 U.S. 731, 735 (2001).

If administrative remedies have not been exhausted at the time an action is brought, it must be dismissed without prejudice. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)(per

REPORT AND RECOMMENDATION
PAGE - 10

curiam). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)(citations and footnote omitted).

The KCCF has a grievance procedure through which inmates may seek review of various aspects of their imprisonment. (*See* Dkt. No. 35 at 3.) The KCCF process involves first attempting to resolve complaints with the staff member who is immediately involved in the issue. (*Id.*) If this informal attempt at resolution is unsuccessful, an inmate may file a grievance in which he identifies his specific complaint as well as the resolution being sought. (*See id.* at 3 and Exs. A-C.) Finally, if an inmate does not agree with the manner in which the grievance was resolved, the inmate may appeal. (*Id.*) The grievance process is not deemed complete unless the inmate pursues an appeal. (*See* Dkt. No. 32 at 6.)

The record before this Court reflects that plaintiff filed a number of grievances regarding the conditions of his confinement during the time period relevant to the claims set forth in the instant action. It appears that each of those grievances was responded to by a staff member, but it does not appear that plaintiff ever appealed any of the responses he received. Plaintiff therefore failed to fully exhaust the grievance process with respect to the grievances he filed and, thus, all of his claims against defendant Wilks must be dismissed.

## CONCLUSION

Based on the foregoing, this Court recommends that the City defendants' motion to dismiss for failure to prosecute be denied and that the City defendants' motion for summary judgment be granted as to plaintiff's claim that defendants O'Cleary and Lang violated his Fourth Amendment rights when they detained him on August 26, 2007, and as to all claims asserted against defendant

REPORT AND RECOMMENDATION
PAGE - 11

Fox. Plaintiff's complaint should be dismissed with prejudice as to each of those claims. This Court further recommends that defendant Wilks' motion to dismiss for failure to exhaust administrative remedies be granted. Plaintiff's complaint be dismissed without prejudice as to all claims asserted against defendant Wilks. Plaintiff's claim that defendants O'Cleary and Lang violated his Fourth Amendment rights when they conducted an illegal search and seizure of his tent, and plaintiff's claim that defendant Lang used excessive force when handcuffing him, remain for resolution at trial. A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of January, 2009.

JAMES P. DONOHUE
United States Magistrate Judge